United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2842

_____

Cheryl D. Christopher,                     *
                                           *
            Appellant,                     *
                                           *
                                           *    Appeal from the United States
      v.                                   *    District Court from the
                                           *    Western District of Missouri.
Adam's Mark Hotels, a division of          *
HBE Corporation,                           *
                                           *
            Appellee.                      *

_____

Submitted: January 13, 1998
     Filed:   March 5, 1998

_____

Before BOWMAN, MORRIS S. ARNOLD, Circuit Judges, and JONES,[1] District
     Judge.

_____

BOWMAN, Circuit Judge.

Cheryl Christopher sued Adam's Mark Hotels seeking damages for employment
discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42
U.S.C. §§ 12102-12213 (1994 & Supp. I 1995), and for intentional and negligent
infliction of emotional distress under Missouri state law. Adam's Mark moved for

_____

[1]The Honorable John B. Jones, United States District Judge for the District of
South Dakota, sitting by designation.

summary judgment, and the District Court[2] granted the motion. Christopher now appeals. We find no error and affirm the judgment.

I.

We must view the record in the light most favorable to Christopher, the nonmoving party, and give her the benefit of all reasonable inferences. See Miller v. National Cas. Co., 61 F.3d 627, 628 (8th Cir. 1995). Christopher applied for a sales secretary position at Adam's Mark in Kansas City, Missouri on May 10, 1995. She submitted a resume and employment application indicating that she possessed a Master's Degree in Computer Science, that she was highly skilled and experienced in the use of WordPerfect (the word processing program utilized at Adam's Mark), and that she had taught WordPerfect at the college level. Christopher was interviewed the same day she applied but did not identify herself as an individual with a disability at the time. She was hired that day for the position.

Christopher reported for work the next day, May 11, 1995. Christopher took part in Adam's Mark's orientation program, at which she was asked to complete several forms. One was a Supplemental Information Form, which contained questions about medical condition and history. In response, Christopher wrote that she had experienced a bipolar breakdown and that she had been hospitalized for bipolar dysfunction. The supplemental form was placed in Christopher's personnel file in accordance with company procedures.

---

[2]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

After orientation, Christopher reported to the sales department where she began on-the-job training with Lisa Lambertson, the sales secretary Christopher was to replace. The training was to consist of Lambertson working side-by-side with Christopher. On this first day in the sales office, Christopher admitted to Lambertson that she was not familiar with the WordPerfect function keys. When asked to execute a merge and set up a banner using WordPerfect, Christopher indicated she did not know how to perform these tasks. Christopher struggled with locating and opening documents, saving documents, and closing documents. At one point during Christopher's training, Ann Windsor, Christopher's immediate supervisor, pulled up a blank form for Christopher to work on. Christopher told Windsor that the form was difficult to use and that one of her first priorities would be to change the office system. Christopher admitted in her depostition that she acted combatively during her brief employment at Adam's Mark. Prior to her termination, however, no one told Christopher that she was having performance problems.

Just a few days after Christopher's employment began, Windsor recommended that Christopher be terminated. Sometime after Christopher's orientation but before her termination, Windsor reviewed Christopher's personnel file. Based upon Windsor's recommendation, Don Russell, Director of Human Resources, agreed that Christopher should be terminated. It was Russell's practice to review employees' files prior to terminating them. On May 17, 1995, Russell terminated Christopher.

II.

We review de novo a decision to grant summary judgment. See Hase v. Missouri Div. of Employment Sec., 972 F.2d 893, 895 (8th Cir. 1992), cert. denied, 508 U.S. 906 (1993). Summary judgment is appropriate when the movant establishes "that there are no material facts in [genuine] dispute and that, as a matter of law, the movant is entitled to judgment." Oldham v. West, 47 F.3d 985, 988 (8th Cir. 1995). We proceed with caution when deciding whether summary judgment is appropriate in

employment discrimination cases because intent is usually a central issue. See Gill v. Reorganized Sch. Dist. R-6, Festus, Mo., 32 F.3d 376, 378 (8th Cir. 1994). This cautionary approach, however, "cannot and should not be construed to exempt" from summary judgment employment discrimination cases involving intent. Krenik v. County of Le Sueur, 47 F.3d 953, 959 (8th Cir. 1995). If there is no genuine issue about the employer's discriminatory intent, to the extent intent is material, then summary judgment may be appropriate.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of [that] disability." 42 U.S.C. § 12112(a). A qualified individual with a disability is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." Id. § 12111(8).

To establish a claim of intentional discrimination under the ADA, we employ the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973). See Aucutt v. Six Flags Over Mid-Am., Inc., 85 F.3d 1311, 1318 (8th Cir. 1996). First, the plaintiff must establish a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. To establish a prima facie case under the ADA, a plaintiff "must show that she is disabled within the meaning of the Act; [that] she is qualified to perform the essential functions of her job with or without reasonable accommodation; and [that] she suffered an adverse employment action because of her disability." Webb v. Mercy Hosp., 102 F.3d 958, 959-60 (8th Cir. 1996). After a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. See McDonnell Douglas, 411 U.S. at 802. Then, in order to prevail, the plaintiff must show that the employer's stated reason was in fact pretextual. See id. at 804. This requires proof that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Viewing the facts in the light most favorable to Christopher, and for purposes of this appeal, we do not quarrel with the District Court's conclusion that she established a prima facie case of discrimination under the ADA. As to the first element, whether Christopher is "disabled," the parties argue whether her bipolar disorder meets the definition under the ADA. See 42 U.S.C. § 12102(2) (defining disability). We have in the past, however, assumed without deciding that bipolar disorder constitutes a disability sufficient to make out a prima facie case. See Birchem v. Knights of Columbus, 116 F.3d 310, 313-14 (8th Cir. 1997). As to the second and third elements, whether Christopher was qualified to perform the essential functions of the job and whether Christopher suffered adverse employment action because of her disability, Christopher contends that she was qualified to perform the secretarial job and that Adam's Mark terminated her employment due to her bipolar disorder. Like the District Court, we will assume that Christopher has established the elements required to make out a prima facie case of discrimination.

Adam's Mark, however, is able to satisfy its burden in the next step of our inquiry by articulating legitimate, nondiscriminatory reasons for Christopher's termination. Adam's Mark asserts that Windsor believed that Christopher lacked the skills she represented on her resume; that Christopher was unable or unwilling to learn the duties of her job; and that Christopher was combative, resentful, and resistant towards her supervisors and co-workers. Adam's Mark thus has rebutted the presumption of discrimination raised by Christopher's prima facie case.

The burden shifts back to Christopher to show that Adam's Mark's articulated reasons are a pretext for discrimination. As evidence of pretext, Christopher first alleges that Windsor admitted it normally takes three weeks to train a new secretary, but that Christopher had worked for less than one week when she was terminated. The record shows, however, that Windsor actually said it may take up to three weeks to understand the company's terminology and routing procedures, but that new secretaries are expected to be proficient in word processing skills when they start work. Windsor

testified that she felt Christopher "had misrepresented her skill level to the point that [Christopher] was unable to do the job." Windsor Dep. at 62-63. Christopher also had admitted that she was not familiar with the basic word processing function keys, and Lambertson had observed Christopher's difficulties opening, saving, and closing documents.

Christopher next alleges that previous sales secretaries began the same job with less experience than she had, and Adam's Mark therefore afforded them more training. She contends she should have been offered additional training, notwithstanding her experience. The evidence shows, however, that Christopher received the same training as did the previous secretaries--the secretary whom Christopher was to replace, Lambertson, sat at Christopher's side and gave her computer instruction. This was exactly how Lambertson had been trained. Moreover, Lambertson testified that she told Christopher that WordPerfect tutorials and computer manuals were available for her use and that she reminded Christopher there was a template above the function keys explaining their usage.

Christopher next contends that Adam's Mark had worked with and given additional time to other secretaries with performance problems in an attempt to salvage their employment. Russell did acknowledge that Adam's Mark had worked with one secretary in the sales department who had exhibited performance problems. Russell went on to testify, however, that the secretary's performance problem was more one of routing paperwork than a deficiency in technical word processing skills. Russell also added that, unlike Christopher, the secretary showed a commitment to learn, improve, develop, and progress.

Finally, as evidence of pretext Christopher points to the fact that Windsor examined Christopher's personnel file within the first few days of her employment and that the disclosure of her disability was contained therein. Apparently Windsor requested Christopher's file because she was questioning Christopher's computer skills.

Even if we assume arguendo that Windsor did become aware of Christopher's disability when she looked in the file, Christopher has failed to point to any evidence that her termination was a result of Windsor's discovery. Mere knowledge of a disability cannot be sufficient to show pretext; otherwise, summary judgment for an employer would be appropriate only in cases where the employer is completely unaware of the plaintiff's disability. Because knowledge of the plaintiff's disability is an essential element of an ADA employment discrimination claim of the sort brought here, see 42 U.S.C. § 12112, a plaintiff who could prove such knowledge would have ipso facto a submissible case of pretext. This defies logic and cannot be what Congress intended.

Christopher argues that in granting summary judgment the District Court did not apply the correct standard. We disagree. "[A] trial judge [is allowed] to decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext." Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1335 (8th Cir. 1996). Here, the District Court correctly applied the Rothmeier standard and determined that Christopher had failed to create a submissible case as to pretext. We agree with the District Court that Christopher's evidence is insufficient for a reasonable trier of fact to infer discrimination. We therefore affirm the order of the District Court granting summary judgment to Adam's Mark.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-