# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4313

_____

| | | |
|---|---|---|
| Judy Wilking, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| County of Ramsey, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 12, 1998
Filed: August 17, 1998

_____

Before BEAM, ROSS, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

The County of Ramsey (County) employed Judy Wilking as a probationary clinical nurse specialist in the Ramsey County Mental Health Clinic (RCMHC) and discharged her during her probationary period of employment. Wilking, who was being treated for depression, brought this disability discrimination suit under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Minnesota Human

Rights Act (MHRA), Minn. Stat. §§ 363.01-363.15. The district court[1] granted summary judgment in favor of the County, and she appeals. We affirm.

## I.

RCMHC provides mental health services to residents of Ramsey County, Minnesota. In February 1993 Wilking was provisionally appointed to RCMHC as a clinical nurse specialist in its psychiatry clinic. The following month, Wilking was officially hired and immediately placed on probationary status for a one-year period. Deborah Brown, a clinical nurse specialist, was Wilking's immediate supervisor during this probationary period.

In June 1993 Brown expressed concerns about Wilking's job performance to Rebecca Glasscock, the clinic manager, and DeAnn LaValle, the clinic's human resources representative. Brown was troubled by Wilking's failure to spend sufficient time on medication-related work, her failure to help reduce Brown's workload, her seeming disinterest with her job, and her lack of productivity. After several discussions with both Brown and Glasscock, LaValle told Brown to indicate her concerns in Wilking's three month performance evaluation.

Brown's evaluation was decidedly negative, and required Wilking to improve in four discrete areas: (1) employee contacts, (2) volume of work, (3) acceptance of direction, and (4) work planning. The evaluation also identified problems concerning Wilking's attendance and observance of work hours.

Wilking submitted a written response disagreeing with every aspect of Brown's assessment. She also obtained a letter of support from Dr. Michael Niehans, a clinic

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

psychiatrist. Dr. Niehans, however, did not have a close working relationship with Wilking and was largely unfamiliar with her job performance. Dr. Niehans began working with Wilking after he submitted his letter of support. After his support letter, Dr. Niehans made clear to Brown and Glasscock that he now disapproved of Wilking's job performance and that he would prefer that Wilking be discharged. Dr. Niehans concluded that he could not rely on her to properly complete her work or care for patients. He specifically complained that she (1) missed meetings that he had scheduled with her, (2) failed to have him cosign patient charts, (3) provided inadequate charting and diagnostic assessments, and (4) seemed indifferent to his suggestions and concerns about her work. Dr. Niehans initiated separate meetings with both Brown and Glasscock to discuss Wilking's poor job performance and possible discharge.

Thereafter, Brown, Glasscock, and LaValle held a meeting to discuss Wilking's post-evaluation performance in light of Dr. Niehans's comments. They agreed that Wilking would not become a permanent employee and that she should be discharged. However, before informing Wilking of their decision, they decided to meet with Don Mockenhaupt, the Director of Ramsey County Mental Health Division, and Keith Gray, the RCMHC personnel manager, to obtain their approval and to discuss possible severance terms. The only question remaining after the meeting was when Wilking would be discharged.

Wilking suffers from chronic depression, and she has received continuous treatment for her depression since 1984. She, however, did not inform anyone at RCMHC about her depression or treatment prior to September 17, 1993, when she was hospitalized due to a reaction from anti-depressant medication. No RCMHC employee was aware that she was being treated for depression prior to her hospitalization, and Wilking asserts that her depression did not affect her work performance at RCMHC.

While Wilking was hospitalized, the decision was made not to offer Wilking

-3-

permanent employment, but no date was set for discharge. After Wilking was discharged from the hospital, she informed Brown that she needed to work reduced hours. Brown complied with Wilking's request and, on October 4, 1993, Wilking returned to work on a reduced schedule. Shortly thereafter, Wilking's doctor released her to full-time work without any restrictions. She requested no further accommodations after this release.

On October 18, 1993, Wilking asked Brown about her employment status with RCMHC. As a result, Brown, Glasscock, and LaValle immediately met to schedule Wilking's discharge date. On October 22, 1993, they informed Wilking that she would not be offered permanent employment. They also offered her the option of resigning with one month of severance pay, which Wilking accepted.

After leaving RCMHC, Wilking accepted a six-month position with Roseville Schools. After declining a position with the nursing department at the College of St. Catherine, she accepted a full-time position, which she currently holds, at North Hennepin Community College as a nursing instructor. She also provides therapy to two patients in her home. She has not requested any accommodations from these employers because of her depression, and she has never claimed that her depression has rendered her unable to perform any of her jobs or that she is restricted from any class of jobs because of her depression.

Wilking filed this suit on February 15, 1996, alleging violations of the ADA and the MHRA. The district court granted the County's motion for summary judgment, holding that she had failed to present a prima facie case of disability discrimination. The district court held in the alternative that the County had articulated a legitimate non-discriminatory reason for discharging her and that she had failed to present sufficient evidence to establish that the County's reason was pretextual for discrimination.

## II.

We review the district court's grant of summary judgment de novo. See Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir. 1998). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

We utilize the well-known burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), to analyze claims brought under the ADA. See Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir. 1997). The MHRA parallels the ADA, and MHRA claims also are analyzed using the McDonnell Douglas burden-shifting scheme. See id. at 1205-06; Roberts ex rel. Rodenberg-Roberts v. Kindercare Learning Ctrs., Inc., 86 F.3d 844, 846 n.2 (8th Cir. 1996) (per curiam). Under this scheme, a plaintiff first must establish a prima facie case of discrimination by "show[ing] that she is disabled within the meaning of the [ADA]; that she is qualified to perform the essential functions of her job with or without reasonable accommodation; and that she suffered an adverse employment action because of her disability." Christopher, 137 F.3d at 1072 (quotations and alterations omitted). Once the plaintiff establishes her prima facie case, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." Id. If the employer meets this burden, the plaintiff then bears the burden of demonstrating that the employer's stated reason is pretextual for discrimination. See id. At all times, the plaintiff bears the ultimate burden of demonstrating that discrimination was the real reason for the employer's actions. See Snow, 128 F.3d at 1206.

Summary judgment is proper if a plaintiff fails to establish any element of her prima facie case. See Weber v. American Express Co., 994 F.2d 513, 515-16 (8th Cir. 1993) ("if the plaintiff fails to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate"). It does not appear to us that Wilking

has established that she is qualified to perform the essential functions of her job.[2]

Under the ADA, a plaintiff must show that "his work performance met the employer's legitimate job expectations." McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1166 (7th Cir. 1997) (quotations omitted); cf. Johnson v. Runyon, 137 F.3d 1081, 1082 (8th Cir. 1998) (per curiam) (imposing same requirement in ADEA cases); Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 346 (8th Cir. 1997) (same); Richmond v. Board of Regents of the Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992) (imposing same requirement in Title VII, § 1981, § 1983, and ADEA cases). Despite recruiting Wilking for the position, Brown gave Wilking a decidedly negative evaluation and criticized almost every aspect of her performance after only a few months of work. Although Dr. Niehans initially disagreed with this evaluation, at that time he did not have an extensive work relationship with Wilking, and he also began criticizing Wilking only months after working directly with her. Both Brown and Dr. Niehans made their negative assessments of Wilking's performance prior to learning about Wilking's depression. Wilking does not argue that Brown's and Dr. Niehans's expectations were not legitimate, and Wilking concedes that her job performance was not affected by her depression. Under these circumstances, it seems clear that Wilking was not meeting RCMHC's legitimate business expectations. See Richmond, 957 F.2d at 598 (employee's receipt of constant negative evaluations supports finding that she was not meeting employer's expectations).

Even assuming that Wilking established a prima facie case, she has not presented sufficient evidence from which a jury could conclude that she was discharged because of her depression. The County explains that it discharged Wilking because of her poor performance, and not her depression. Considerable evidence supports this explanation: Brown's decidedly negative evaluation, Dr. Niehans's post-evaluation criticisms, and

---

[2]Accordingly, we will not address the district court's finding that Wilking failed to establish the other elements of her prima facie case.

the fact that Wilking's superiors agreed that she should be discharged prior to their awareness of her depression. Wilking attempts to refute this evidence by pointing out that Brown, Glasscock, LaValle, and Dr. Niehans were aware of her depression at the time of her actual discharge. She also contends that her performance was not sufficiently poor to warrant her discharge.

While reviewing the employer's articulated reasons for discharge and the plaintiff's refutation thereof, we must keep in mind that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994) (quotations omitted). Accordingly, "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997); see also Clay v. Hyatt Regency Hotel, 724 F.2d 721, 725 (8th Cir. 1984) ("While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination.").

We have held that a "trial judge is allowed to decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext." Christopher, 137 F.3d at 1073 (quotations and alterations omitted). To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both "that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." Id. at 1072 (emphasis added). "This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." Roxas v. Presentation College, 90 F.3d 310, 316

(8th Cir. 1996). Specifically, the plaintiff "must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1165 (8th Cir. 1998).

Viewed in the light most favorable to Wilking, the evidence shows that the County discharged Wilking because of her poor performance, which Wilking has admitted was not a result of her depression. Prior to her hospitalization, Wilking did not inform anyone at RCMHC that she was suffering from depression, and no RCMHC employee ever indicated that they were aware that she was suffering from depression. Brown, Glasscock, and LaValle agreed to discharge her before they were aware of her depression. In addition, Dr. Niehans actively sought Wilking's discharge based on her poor performance before he was aware of her depression. Although Wilking was not actually discharged until after her hospitalization, the evidence clearly shows that the decision to discharge her had been reached solely on the basis of her poor job performance, which was not affected by her depression. The mere fact that her discharge was effectuated after the hospitalization, and thus after everyone became aware of her depression, does not preclude the grant of summary judgment. See Christopher, 137 F.3d at 1073 ("Mere knowledge of a disability cannot be sufficient to show pretext; otherwise, summary judgment for an employer would be appropriate only in cases where the employer is completely unaware of the plaintiff's disability. Because knowledge of the plaintiff's disability is an essential element of an ADA employment discrimination claim of the sort brought here, see 42 U.S.C. § 12112, a plaintiff who could prove such knowledge would have ipso facto a submissible case of pretext. This defies logic and cannot be what Congress intended."). Wilking has failed to present "evidence that her termination was a result of [her employer's] discovery" of her depression. Id.

Although not bringing a failure to accommodate claim, Wilking contends that RCMHC's unwillingness to accommodate her needs demonstrates pretext for

discrimination. Specifically, she claims that "[t]he record is replete with testimony from the decision makers to the effect that they could not tolerate the very accommodations Wilking sought--a medical leave of absence and a reduction in work hours." Appellant's Br. at 25. However, the evidence belies this contention. After Wilking's hospitalization, RCMHC accommodated her by granting her a medical leave of absence. In addition, RCMHC accommodated her by allowing her to work reduced hours when she returned to work from her medical leave of absence. Moreover, she did not ask for any further accommodations from RCMHC once her doctor released her to full-time work without restrictions.

Wilking also contends that various aspects of her poor performance, such as missing meetings with Dr. Niehans and failing to obtain his signature, were not serious enough to warrant a discharge. However, any "argu[ment] that the infractions were not serious enough to warrant a discharge . . . merely questions the soundness of defendant's judgment," and does not demonstrate pretext for discrimination. Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994).

Wilking further contends that she has created a factual issue as to one of the County's articulated reasons for discharge--her lack of productivity. According to Wilking, evidence exists showing that she achieved the requisite productivity. Even assuming that a factual issue exists with respect to this one reason, Christopher specifically explained that a "trial judge is allowed to decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext." 137 F.3d at 1073 (quotations and alterations omitted). The potential issue concerning Wilking's productivity in no way changes the overwhelming evidence that Brown, Glasscock, LaValle, and Dr. Niehans were dissatisfied with Wilking's overall performance and decided to discharge Wilking before learning about her depression.

Accordingly, we conclude that the district court properly granted summary judgment to the County with respect to Wilking's ADA and MHRA claims.

## III.

For the foregoing reasons, we AFFIRM the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.