# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3902

_____

Lynn Burchett,

        Plaintiff-Appellant,

v.

Target Corporation, a Minnesota
Corporation,

        Defendant-Appellee.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: June 13, 2003
Filed: August 13, 2003

_____

Before BOWMAN, MURPHY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Lynn Burchett brought this suit against her employer, Target Corporation (Target), alleging disability discrimination in violation of the Americans with Disabilities Act of 1990 (the ADA), 42 U.S.C. § 12101 et seq., and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363.01–363.15. The district court[1]

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

granted summary judgment in favor of Target. Burchett appeals, arguing that there were genuine issues of material fact to preclude summary judgment. We affirm.

I.

Burchett is presently on long term disability leave from Target. She worked for Dayton's, the Target company department store, from 1973 until she was laid off in November 1995. In December 1996 she began working at Target in its distribution department, which is responsible for getting consumer products to its retail stores around the United States. Distribution employees communicate with the trucking and transportation carriers used by Target to ensure that merchandise is delivered. Burchett was given responsibility for maintaining electronic transfer documents, working with current carriers, and bringing new carriers into the system. She reported to Kari Melhus, who was a supervisor of Transportation Services. Melhus in turn reported to Jody Marvin, a senior manager of Transportation Finance and Systems. Burchett started out in a nonexempt or nonexecutive position, but eventually became a transportation analyst, an executive position.

At first Burchett had a very positive relationship with Melhus and Marvin. Her performance was rated as excellent on her reviews, and she received two special awards for good service. Burchett states that she began having problems at work when stress and personal issues exacerbated a recurrent depression she had experienced for some years. She says that in 1999 and early 2000 her depression caused her performance at work to suffer. She did not notify Target that she suffered from depression, however, or that it was affecting her work.

Melhus perceived that Burchett's performance was declining. According to her, Burchett was late in finishing tasks, failed to complete reports accurately, and did not follow through on her assignments. Burchett talked to Melhus in February 2000 about transferring to a less stressful position, and she began applying for other lower

level, nonexecutive positions without mentioning that she was suffering from depression or that she wanted to transfer because of it. Burchett submitted several applications to Melhus for her endorsement, and Melhus recommended her for transfer and passed on her applications to the relevant departments.

On March 31, 2000, Burchett received a formal performance review from Melhus in which she received a lower score than ever before. Melhus identified a number of problems with Burchett's work and gave specific recommendations as to how she might improve. Marvin also had become concerned about Burchett's declining performance and talked with her about it. In the first week of April 2000, Marvin told Burchett that she seemed bored with her job and might need to move to a new position at Target. Burchett responded that she was having trouble doing her job because she was ill. This was the first time Burchett had mentioned an illness to either Marvin or Melhus. The week after the review was conducted, Burchett informed Target that she would need to go on a leave of absence because her depression had worsened. She also withdrew all her applications for transfers to new positions.

While Burchett was on leave, she communicated with Melhus by e-mail and kept her informed about her medication and therapy. At first Burchett told Target that she would be able to return to work on April 24, 2000. As that day approached Target asked if she would be able to return as scheduled, and Burchett responded that she would need to stay out until May 1, 2000. Target again contacted Burchett before May 1, and she responded that her return would need to be postponed until June 5, 2000. This pattern recurred again around June 5, when Burchett informed Target that she could not return until June 14.

Burchett returned to work on June 14 and began a part time schedule which complied with her doctor's orders. She began working a six hour shift three days a week. Melhus reviewed Burchett's tasks before her return and adjusted her

responsibilities to fit these time restrictions. Melhus reassigned those tasks which required daily communication with carriers to another employee within the department, and Burchett was given work that did not require such daily contacts but focused more on long term goals of the department. Burchett complained she did not have proper training for her new responsibilities. It appeared to Melhus that Burchett's performance problems had increased, that she was failing to follow instructions regarding her new work assignments, and that she continued to work on reassigned matters which required daily contact with carriers. Melhus told Burchett that her failure to follow instructions was creating problems, for she was not completing the tasks assigned to her and carriers were receiving conflicting information. One carrier had threatened not to ship for Target until the conflict was resolved.

Melhus also complained that Burchett had ignored other instructions she had been given. Burchett had scheduled an offsite training session even though she had been told to organize an onsite lunch presentation. While two employees assigned to work with the distribution centers were engaged in recommending ways to make the delivery paperwork process more efficient, Burchett wrote conflicting instructions to one of the distribution centers. In addition, she sent an e-mail to a distribution center instituting a deadline for carriers without discussing it with anyone else in the department. Burchett also became upset when Melhus instructed her to make up time she missed by scheduling doctor appointments during her work hours. Melhus met with Burchett on a regular basis during this period to discuss performance issues and how she could improve.

From June through August 2000, Burchett continued to apply for other nonexecutive positions at Target. She took the applications to Melhus who supported them by forwarding them with her endorsement. Burchett also went to see Marvin to ask for a transfer, but Marvin told her it might be hard to move while working only part time. Marvin then wrote to Melhus suggesting they discuss other job options for

-4-

Burchett because she seemed unhappy with her job. On August 7, Burchett sent an e-mail to Melhus informing her that she could start working three quarter time starting the next week and that her doctor thought she could be back to full time by the end of September.

Melhus believed Burchett's performance problems were not improving as she neared her mid year review. Melhus asked her to prepare a prereview statement, and Burchett submitted a document discussing her leave and hour restrictions instead of the standard review statement expected by Target. Melhus told her that more information was required and that Burchett should include a statement about her accomplishments, challenges, and opportunity areas. Melhus also decided that Burchett was not responding to the weekly performance counseling she had undertaken and that she needed more formal counseling. On August 8, Melhus delivered a verbal reprimand to Burchett at a meeting she scheduled with her. At the meeting Melhus discussed with Burchett specific performance deficiencies and provided examples. The reprimand focused especially on Burchett's need to prioritize her tasks, to work only on assigned tasks, and to check with a supervisor before implementing any decision. Melhus told Burchett that she needed to improve or she would be subject to further discipline.

After communicating the reprimand, Melhus became concerned that she could no longer recommend Burchett for transfers within the company. She discussed her concern with Bryan Baker who had human resource responsibilities for the distribution department. He told Melhus that Target did not transfer an employee from one manager to another if the employee was experiencing significant performance problems. After talking to Baker in early September, Melhus informed Burchett that she could not forward her applications to other departments until she improved her performance in her current position. Burchett then called Baker to request a transfer to the imports department. She told him that she had a disability and could not perform at her prior level in her current job. She also told him that

Melhus was hostile toward her. Baker responded that while she had previously performed well, her current performance was not satisfactory and she could not be recommended for other positions within Target until the situation improved. He also told her that she should look outside of Target if she thought she needed a different job.

On September 12, 2000, Burchett requested that Melhus forward her application for transfer to the imports department. Melhus responded that she could not endorse an application for transfer unless Burchett improved her performance. Burchett became very upset, gathered her belongings, and immediately left the workplace. Two days later Burchett sent an e-mail to all employees in the distribution department thanking them for their support and directing criticism at Melhus. Burchett never returned to work, and she was placed on a leave of absence. She is now on long term disability leave from Target.

Burchett filed this action in the district court on June 7, 2001, alleging that Target had discriminated against her based on an actual and perceived disability under the ADA and the MHRA. She claimed that Target discriminated against her by refusing to transfer her to a new department, which she contended was evidence of both disparate treatment and discrimination based on failure to accommodate. She also alleged a hostile work environment and retaliation for exercising her statutory rights. Target moved for summary judgment.

The motion was granted after the court concluded that Burchett had not established that she was disabled within the meaning of the law because she did "not create a question of fact on the issue of whether her cognitive abilities and capacity for concentration are significantly limited as compared to the abilities of an average person in the general population." Furthermore, "[e]ven assuming" that Burchett could show Target "regarded her as disabled," she had not established the second element of her prima facie case requiring her to show a genuine issue of material fact

as to whether Target had failed to provide reasonable accommodations that would enable her to perform the essential functions of her position. The court also ruled that her claims for hostile work environment or retaliation were unsupported.

## II.

Burchett appeals from the judgment. She contends that she made out a prima facie case of discrimination by showing that she was actually disabled by depression or that Target regarded her as disabled within the meaning of the ADA and MHRA; that she was qualified to perform the essential functions of her job if transferred to a new department and that Target failed to make reasonable accommodations for her; that Target took adverse action against her by disciplining her without following its formal policy[2] and then denying her a transfer; and that Target's proffered explanation for its adverse employment action was a pretext for discrimination. On her appeal Burchett does not raise any issues with regard to the dismissal of her claims for hostile work environment and retaliation.

Target responds that Burchett did not establish a prima facie case of disability discrimination and that the district court correctly concluded that Target had reasonably accommodated her by following all of her doctor's requests for leave and for restructured hours. Moreover, argues Target, there are other grounds for affirmance, see ACT, Inc. v. Sylvan Learning Sys., Inc., 296 F.3d 657, 663 n.3 (8th Cir. 2002), for it did not regard Burchett as disabled and she did not suffer an adverse employment action or show a causal connection between her alleged disability and any employment action she attacks.

---

[2] Burchett claims that Target had a discipline policy requiring use of a particular form for a verbal reprimand but that Melhus used other paper providing more space to detail Burchett's problems. Burchett argues that this created an inference that the reprimand was based on personal animus rather than her performance.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party.  See Viking Supply v. Nat'l Cart Co., Inc., 310 F.3d 1092, 109–96 (8th Cir. 2002).  Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the "nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).  Summary judgment is appropriate in a disability discrimination case if a plaintiff cannot make an evidentiary showing to support each element of a prima facie case.  See Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998).  We may affirm the judgement on any grounds supported by the record.  Land v. Washington County, Minnesota, 243 F.3d 1093, 1095–96 (8th Cir. 2001).

The burden shifting formula in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), is used to evaluate claims under both the ADA and the MHRA. See Wilking, 153 F.3d at 872.  Under this formula a plaintiff must first establish a prima facie case of discrimination by demonstrating 1) that she has a disability within the meaning of the ADA or the MHRA (or that her employer thinks she does); 2) that she is qualified to perform the essential functions of her job, with or without reasonable accommodation; and 3) that she has suffered an adverse employment action as a result of her disability.  Id.  If the plaintiff establishes a prima facie case, then the burden shifts to  the employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id. at 872–73.

Assuming without deciding that Burchett was either disabled or regarded as having a disability, the second element of a prima facie case required her to show that she was qualified to perform the job.  The determination of whether an employee is qualified to perform the essential functions of a job involves a two step inquiry. Land, 243 F.3d at 1095.  First the employee must show that she meets the necessary prerequisites for the job, and then she must demonstrate that she can perform the

essential functions, with or without reasonable accommodation. Id. If the employee establishes that she cannot perform the essential functions of the job without accommodation, she must also make a facial showing that reasonable accommodation is possible and that the accommodation will allow her to perform the essential functions of the job. See Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000). If the requested accommodation is a transfer, she must also demonstrate that she cannot be accommodated in her current position because reassignment is "'an option to be considered only after other efforts at accommodation have failed.'" Id. at 1019 (quoting Aka v. Washington Hosp. Center, 156 F.3d 1284, 1301 (D.C. Cir. 1998)).

Under the ADA and the MHRA, an employer must reasonably accommodate an employee's disability and engage in an interactive process to identify potential accommodations that could overcome her limitations. See Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002). If the employee makes a showing that reasonable accommodation is possible, the burden of production then shifts to the employer to show that it had a legitimate nondiscriminatory reason not to provide the accommodation, see Cravens, 214 F.3d at 1020 (employer is not "required to transfer a disabled employee if such a reassignment would violate … a legitimate, nondiscriminatory policy of the employer.") (internal citations omitted). The ultimate question of whether the employer discriminated by failing to provide the accommodation is then for the fact finder to determine. See Land, 243 F.3d at 1096; Cravens, 214 F.3d at 1016. While reassignment to a vacant position can be a reasonable accommodation under the ADA, it is not necessarily required. See 42 U.S.C. § 12111(9); see also Cravens, 214 F.3d at 1017. An employer need not reassign an employee unless accommodation within her current position would impose an undue hardship on her. See Cravens, 214 F.3d at 1019.

Burchett contends that she was unable to perform her job in the distribution department because of her disability and that Target should have given her a transfer.

That was the only accommodation which would have allowed her to continue working she says, because the stress level at her position had exacerbated her depression and could not be reduced by working fewer hours or on different projects. She contends that there were open positions for which she was qualified in September 2000.

Target asserts that it engaged in an interactive process with Burchett and accommodated her by restructuring her work load, by allowing her to work diminished hours, and by providing flexibility in her schedule for medical appointments and other scheduled meetings. It argues that it was not required to transfer Burchett because she could perform her current job with the reasonable accommodations it was providing. It points to evidence in Burchett's deposition and on medical forms filled out by her doctor which it says establish that she was able to perform in her position, subject to the hour restrictions which Target had been following.

After thoroughly examining the record, we conclude that Burchett did not establish a genuine issue of material fact as to whether Target failed to accommodate her by not granting her a transfer to a different department. Burchett did not show that with the accommodations Target had provided she was unable to perform the duties of her position because of her depression.

Although Burchett testified that she had been assigned a new set of unfamiliar duties after her leave which took all her energy to learn, her deposition undercut her assertion that she was unable to do her job with the limitations given by her doctor. Burchett admitted in her deposition that she was able to do her new duties adequately even though it was "very tough to do [an] above average or outstanding job" because of lack of support, training, and an adequate job description. She testified that "I can do the job, yes, but the surrounding circumstances were not conducive to doing the job." She also stated in her deposition that in June 2000 she "was able to perform as

a transportation analyst, do my previous responsibilities as I knew them. I was making a fine recovery." According to her own statement, the "only limitation [she recalled was] the doctor's orders to start as part-time and then move on to full-time. That was a very temporary situation."

Not only did Burchett admit in her deposition that she could perform the functions of her position with the accommodations Target was providing, the record also shows that her doctor thought she could perform her job and in fact was expanding her hours and recommending that she return to full time in September. There is no dispute that Target made accommodations after being told that Burchett suffered from depression. It restructured her work load and reduced her work hours in accordance with her doctor's orders. "[R]eassignment is an accommodation of last resort," which does not become necessary unless it is the only accommodation that will enable an employee to continue working for the employer. Cravens, 214 F.3d at 1019. We conclude that Burchett failed to make an evidentiary showing that Target was obligated to transfer her. She did not show that "accommodation within [her] current position would pose an undue hardship" so Target was not required to consider a transfer. Id. (quoting 29 C.F.R. § 1603.2(o)). She thus has not established a genuine issue of material fact concerning her claim that Target failed to provide reasonable accommodation for her disability.

Burchett failed also to establish a genuine issue of material fact as to whether she suffered an adverse employment action because of her disability, the third element of a prima facie case. To establish "an adverse employment action an employee must show a 'tangible change in duties or working conditions that constituted a material employment disadvantage.'" Moisant v. Air Midwest, Inc., 291 F.3d 1028, 1031 (8th Cir. 2002) (quoting Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997)). Burchett contends that Target took adverse action against her by disciplining her by means of the verbal reprimand and then using it to deny her a transfer.

-11-

A negative performance review is not in itself an adverse employment action, however, and it is actionable only if the employer subsequently uses that review to alter the terms or conditions of employment to the detriment of the employee. See Spears v. Missouri Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000). Burchett has not established that the verbal reprimand was motivated by intentional discrimination rather than her actual work performance or that it was used in order to alter the terms and conditions of her employment. Target presented evidence that both the reprimand and the subsequent refusal to transfer Burchett were based on her performance problems, and Burchett has not produced sufficient evidence, as opposed to mere allegations, to raise a genuine issue for trial. Although Burchett alleges that the reprimand was based on her disability and that it was the only factor Target used to deny her a transfer, she did not present sufficient evidence to support her argument. Burchett acknowledged that her performance level was lower than it ever had been before and she bears the burden to establish that Target's explanation for her reprimand and the refusal to forward her transfer application was pretextual and based on intentional discrimination, Wilking, 153 F.3d at 874. We conclude that she did not meet that burden.

Even if Target's refusal to transfer Burchett to a lower ranking job were viewed as an actionable adverse employment action, she has failed to establish a causal connection between that refusal and her disability as required in the prima facie case. See Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 657–58 (8th Cir. 2001). Burchett argues that Target's refusal to transfer her was based on disability because it did not have a written policy precluding the transfer. Target did have a job posting policy, however, which required that a manager state on a transfer application whether she believes her employee is qualified for the new position. Baker and Melhus testified in their depositions that it was Target's policy not to transfer an unsatisfactory employee to another manager. Burchett contends that this policy was shown to be pretextual by evidence that Hugh Heidt, a nondisabled coworker, was transferred to a lower level position within the distribution department when he was having trouble

-12-

performing all the essential functions of his job. Heidt's transfer was different from Burchett's situation, however, for he remained at all times in the same department under Melhus' supervision. Heidt's reassignment was thus not inconsistent with Target's stated policy of not transferring an employee with performance problems to another manager, and it does not give rise to an inference of pretext.

Burchett also claims that an inference of discrimination arises from Melhus' refusal to forward her transfer application. She says Target's job posting policy only requires a manager to state whether or not the employee is qualified for the new position. The application form includes a space for the supervisor to indicate either that the employee is qualified or that she wishes to discuss the employee's qualifications with human resources. Melhus testified that she became concerned that she could no longer forward Burchett's applications with an indication she was qualified because her performance problems were of a type that would continue to occur. She therefore went to human resources to discuss Burchett's performance, and Baker told her that it was Target's policy not to forward applications if an employee was not performing well in her current position and that forwarding an application was an indication of approval.

Burchett has not shown that Melhus's conduct in respect to her application was inconsistent with Target's application requirements or any other evidence to suggest that Target's refusal to transfer her was based on her disability. We conclude that she did not make a sufficient showing on the third element of her prima facie case to survive the summary judgment motion.

III.

Because Burchett has not shown that she could not perform her current job with the reasonable accommodations Target was already providing, we conclude that she has not established a genuine issue of material fact on the second element of her

-13-

prima facie case. She has also not met her burden as to the third element because she has not put forth evidence to demonstrate that she suffered an adverse employment action because of her disability. The district court did not therefore err in granting summary judgment.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.