NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0178n.06

Case No. 14-1748

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 06, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| C. MICHAEL ALLEN | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| WAL-MART STORES, INC., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: KEITH, COOK, and DONALD, Circuit Judges.

COOK, Circuit Judge. C. Michael Allen, a former store manager for Defendant Wal-Mart Stores, Inc., alleges that Wal-Mart demoted him because he took a twelve-week leave of absence under the Family Medical Leave Act ("FMLA"). Wal-Mart maintains that it demoted Allen because he asked to be reassigned to another position *before* he applied for FMLA leave. The district court granted summary judgment to Wal-Mart, and Allen appeals. We AFFIRM.

I.

Allen began working at Wal-Mart in 2007, ultimately becoming store manager at the Commerce Township, Michigan Wal-Mart in July 2008. Allen received steadily worsening performance reviews during his tenure. In his first yearly review, his supervisor, Michael Collischan, rated him a "solid performer" overall but noted two areas that needed development.

Ten months later, Collischan and Market Human Resource Manager Cindy Ewing issued Allen a "verbal coaching" because of his store's substandard housekeeping and his poor grasp of Wal-Mart's inventory management system. In his second annual review, Allen received "Development Needed" or "Below Expectations" ratings in four areas.

Collischan placed Allen on a Performance Improvement Plan (PIP), which uses coaching, training, and regular follow-ups to improve performance. Nevertheless, Allen received a "written coaching" in September 2009 and an overall performance rating of "Development Needed" in his next yearly review. William Bartell, who replaced Collischan in 2010, gave Allen a lukewarm midyear review and placed him on a second PIP. Allen has never disputed the accuracy of these evaluations.

Bartell and Ewing issued Allen another "verbal coaching" on October 13, 2010. During their meeting, Allen admitted that he was struggling to meet Wal-Mart's expectations and had experienced serious setbacks in his personal life. Bartell and Ewing encouraged Allen to think about his future with the company and decide what he wanted to do.

Five days later, Allen sent the following email to Bartell:

> Over the weekend, I have been reflecting on my position as the store manager of [Store No.] 2618. After much consideration, I feel that it would benefit me and the company if I considered taking another position within the company.
>
> The past few weeks have been particularly difficult in my personal life. My wife lost a pregnancy after many years of attempting to have a second child. The stresses caused by this and the challenges of running the store have been very trying on me and my family.
>
> In moving to another position, I feel that it would provide opportunities to step into another role that would help me to further learn and develop my skills to benefit Walmart [sic] in the future. Many new positions that I might move to would provide me opportunities to address the family concerns that I have.

> My first choice in my career development would be to pursue the track leading to a [Market Human Resource Manager] position. I feel that my background in the stores, as well as my competencies are well suited for this type of position. I know that there are not currently positions available, but would like your help and development to move into that direction. In the meantime, I feel that stepping into another role in store operations such as shift manger [sic] would help to continue my development and provide me the necessary time to devote to my family.

(R. 17-4, Oct. 18, 2010 Email.) Tellingly, Allen concluded the email with "I hope that you will consider my *request for reassignment*." (*Id.* (emphasis added).) Both positions mentioned in the email offered significantly lower pay; the human resource position, for example, entailed a reduction in salary of between $40,000 and $80,000. Bartell interpreted Allen's email as a request for reassignment and conveyed the request verbally within twenty-four hours to Ewing and Danielle Bank, the Regional Human Resource Manager. He also forwarded the email to Bank on November 2, explaining that "Allen [was] asking to step down and do something different." (R. 17-4, Nov. 2, 2010 Email.) According to Bartell, he received Bank's approval that day to proceed with the transfer.

Two days later, Allen applied for and obtained a leave of absence under the FMLA. When he returned to work in late January 2011, Bartell and Ewing informed him that they had accepted his request and reassigned him to an assistant manager position at the nearby Hartland, Michigan Wal-Mart. Allen accepted the job, which paid $55,000 less in salary than his previous position, but began looking for other opportunities before ultimately resigning in April 2011.

Allen sued Wal-Mart, alleging that Wal-Mart interfered with his FMLA rights and retaliated against him for taking FMLA leave by failing to restore him to his store manager

position. The district court granted summary judgment to Wal-Mart following the close of discovery. Allen timely appeals.

## II.

We review the district court's grant of summary judgment de novo. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). We construe all reasonable inferences in the nonmoving party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), upholding the grant of summary judgment if "there is no genuine dispute as to any material fact and [Wal-Mart] is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).

## III.

The FMLA entitles an eligible employee to twelve weeks of leave annually if he has a "serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). An employee returning from FMLA leave must be reinstated to his position or an equivalent position in terms of pay, benefits, and other conditions of employment. 29 U.S.C. § 2614(a)(1). We recognize two distinct theories of recovery under the FMLA: "(1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) (citations omitted).

Allen asserts claims under both theories, which we analyze using the familiar *McDonnell Douglas* burden-shifting framework. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012); *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Absent direct evidence of

discrimination, Allen bears the initial burden of showing a prima facie case of discrimination. Should he meet this burden, Wal-Mart must articulate a legitimate, nondiscriminatory reason for its employment decision. If Wal-Mart provides such a reason, Allen must show pretext to survive a motion for summary judgment. *See Seeger*, 681 F.3d at 285.

*A. Interference Claim*

Because the parties agree that Allen can make out a prima facie interference claim, we first consider Wal-Mart's reason for failing to reinstate Allen to his store manager position. Wal-Mart maintains that it reassigned Allen because he expressly asked to be reassigned before he took his leave. The district court credited Wal-Mart's position, finding that the "unambiguous language in the e-mail unequivocally indicates that [Allen] was requesting reassignment to a new position within Wal-Mart." Allen, however, argues that the email was simply an invitation to discuss his possible reassignment. He suggests that "[i]f the two positions were equally possible, the tie must be awarded to [him] under the well-established summary judgment standard." But he fails to persuade us that his interpretation is equally plausible.

Allen himself characterized his email as a "request for reassignment" and urged Bartell to consider it. He explained he felt "that it would benefit me and the company if I considered taking another position within the company," which would necessarily require him to step down from his position as store manager. And both positions Allen identified as his preferred landing spots offered less responsibility and pay. We thus agree with the district court that Wal-Mart has articulated a legitimate, nondiscriminatory reason for reassigning Allen to a lesser position.

We also agree with the district court that Allen cannot show the proffered reason is merely pretextual. Allen argues that a jury could reasonably conclude that Wal-Mart acted on his request for reassignment after he took his leave, and infer from that fact that Wal-Mart used his request as pretext to interfere with his FMLA rights. But he offers only speculation in the face of documentary proof and deposition testimony that Bartell relayed the request to Bank for approval and received permission to move forward with the reassignment prior to Allen's leave. He posits that emails Bank sent to Ewing about the transfer in February 2011 show the approval could not possibly have happened before he took his leave. But the record establishes only that Ewing did not know why Bank followed up about the reassignment in February, not that the reassignment was still an open question. Allen cannot survive summary judgment through speculation or conjecture. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). He points to no evidence of pretext other than temporal proximity—and that alone cannot establish pretext. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003).

Allen cannot show pretext even assuming Wal-Mart did not act on his request until after he requested leave. As the district court observed, the FMLA does not require Wal-Mart to ignore Allen's request for reassignment or give him the opportunity to revoke it merely because he requested leave in the interim. (*See* R. 23, Op. & Order at 10–11 (citing *Miles v. Nashville Elec. Serv.*, No. 3-11-0931, 2012 WL 3561809 at *3 (M.D. Tenn. Aug. 16, 2012), *aff'd*, 525 F. App'x 382 (6th Cir. 2013).)

Moreover, under this circuit's "honest belief" rule, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee

cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Allen does not seriously dispute that Wal-Mart honestly believed his email to be a request for reassignment. *See Donald*, 667 F.3d at 763 (applying honest belief rule to an interference claim where belief was unrelated to FMLA leave). In fact, Allen admitted to the district court that Bartell's testimony "set forth an accurate recitation of what may have been in [his] mind." (R. 19, Pl.'s Summ. J. Resp. at 7.) In Bartell's email to Bank—sent two days *before* Allen applied for leave—he explains his understanding that "Allen [was] asking to step down and do something different." And given the language of Allen's email, Wal-Mart "reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski*, 274 F.3d at 1117 (internal quotation marks omitted). In short, the court did not err in granting summary judgment to Wal-Mart on Allen's interference claim.

*B. Retaliation Claim*

Nor did the district court err in granting summary judgment to Wal-Mart on Allen's retaliation claim. To establish a prima facie case of retaliation under the FMLA, Allen must show that: "(1) he was engaged in a statutorily protected activity; (2) [Wal-Mart] knew that he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action." *Seeger*, 681 F.3d at 283. The district court found that "no reasonable juror could conclude that a causal connection exists between [Allen]'s FMLA leave and [Wal-Mart]'s reassignment of [Allen] to a different position."

We agree. Allen offers no evidence to refute Bartell's deposition testimony that Wal-Mart accepted his request for reassignment two days *before* he engaged in FMLA-protected activity by requesting leave, and he therefore cannot meet his burden of showing a causal connection between the demotion and his FMLA leave. And in any event, Allen cannot show that Wal-Mart's nondiscriminatory reason for reassigning him is pretextual for the reasons discussed in the previous section.

IV.

For these reasons, we AFFIRM the judgment of the district court.