NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0293n.06

Case No. 19-1040

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DARLENE BROWN, | ) | **FILED**<br>May 26, 2020<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| KELSEY-HAYES COMPANY; TRW AUTOMOTIVE, INC.; ZF TRW AUTOMOTIVE HOLDINGS CORP. | ) | **OPINION** |
| Defendants-Appellees, | ) | |

BEFORE: CLAY, THAPAR, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. When another company acquired Plaintiff Darlene Brown's employer, Kelsey-Hayes Company, Brown did not see her prior performance as the reason she did not receive another job after the company eliminated her position. Instead, she pointed to the company's alleged perception of her asthma, her wheelchair usage at work, her age, and her FMLA leave. So she sued. But because Brown failed to show a genuine issue of material fact concerning pretext for her discrimination and retaliation claims, we AFFIRM the district court's grant of summary judgment to Defendants.[1]

---

[1] Defendants are Kelsey-Hayes Company, TRW Automotive, Inc., and ZF TRW Automotive Holdings Corp.

I.

Defendant Kelsey-Hayes Company employed Brown from 2003 until her termination at 59-years-old in January 2016. Brown reported to Ann Lipanski, the Vice President of Internal Audit, from 2006 to 2016. She acted as Lipanski's Administrative Assistant in 2006 and then worked as Lipanski's Senior Executive Secretary for nine years. To name a few tasks, Brown corresponded for Lipanski, maintained Lipanski's calendar, set up travel arrangements, and prepared reports and presentations.

In 2015, German auto supplier ZF Friedrichshafen AG acquired TRW Automotive Holdings Corporation and its subsidiary, Kelsey-Hayes. Naturally, as the entities combined, decisionmakers eliminated some positions. Lipanski resigned, anticipating these eliminations, and left the company in December 2015. As a result, the new company got rid of Lipanski's position and a few others in her department, including Brown's. Removing Brown's position and not transferring her to another paved the way for this lawsuit.

Now, Brown used oxygen at work because she has asthma. And she sometimes used a wheelchair around work when her asthma acted up. Kelsey-Hayes had granted Brown Family and Medical Leave Act (FMLA) leave a few times because of these asthma problems. And Brown thought the company's failure to transfer her had to do with these medical issues.

But the company pointed to another reason. During Brown's time as Senior Executive Secretary, Lipanski evaluated Brown each year. And Lipanski always gave Brown mixed reviews. For these evaluations Lipanski used the company's "Employee Performance & Development Process" (EPDP) form. This form from 2006 to 2014 included an overall rating category and at least a dozen subcategories. Supervisors entered one of four options when rating an employee in each category: (1) "OC" for outstanding contribution, (2) "SC" for solid contribution, (3) "IR" for

improvement required, and (4) "TS" for too soon to evaluate. (R. 24-4, PageID 712–40.) Brown got an IR overall rating in 2011 and 2013 and a SC overall rating the other years. Lipanski often wrote both positive and negative notes about Brown's work in the comment sections on the forms.

This evaluation process changed in 2015. Supervisors then could review employees using two more performance levels: "SC Plus" and "SC Minus." (*See id.*; *see also* R. 20-6, PageID 214.) Lipanski assigned Brown a SC Minus overall rating in 2015. After submitting Brown's evaluation in 2015, Lipanski reentered the system and changed the "T&E Administration, Reservations and Expense Reporting" subcategory on Brown's evaluation from a SC to a SC Minus. This is allegedly because Brown struggled with some travel arrangements in late 2015. The comment section for the "T&E Administration, Reservations and Expense Reporting" subcategory read: "Darlene needs to maintain [a] higher level of focus to ensure 1) reservations are complete and include ground transportation, and 2) the purpose for each meeting, location and meeting organizer(s) are understood. Darlene is very familiar with the systems used for scheduling travel and reporting travel expenses." (R. 24-5, PageID 742.) Lipanski made these changes right before she left in December 2015.

The company removed Brown's Senior Executive Secretary position shortly after, since it did not plan to hire a replacement for Lipanski. In mid-January 2016, Joe Cantie, TRW Automotive Holdings Corporation's CFO, and Lisa McGunagle, the Corporate Human Resources (HR) Manager for the Finance and IT departments, met with Brown. The two told Brown that her position no longer existed because of the companies combining. Brown asked if she could take an administrative position working for Jerry Dekker. McGunagle explained that Brown could apply online for that role.

To be sure, McGunagle knew that Brown suffered from asthma, used a wheelchair some days, and took FMLA leave. In fact, Brown discussed her leave with McGunagle. During one such conversation, McGunagle told Brown that she was looking at Brown's documents and thought "wow, this girl is never here." (R. 23-5, PageID 501.) Brown said "really?" to which McGunagle responded, "yeah, I'm just joking." (*Id.*)

After this termination meeting with Cantie and McGunagle, Brown applied for, or at least showed interest in, eleven secretarial positions, including the position working for Dekker.[2] She submitted a Voluntary Self-Identification of Disability form and a U.S. Equal Employment Opportunity form when applying. And around the time she started applying for these spots, her attorneys notified McGunagle about Brown's potential plan to sue because Brown believed that discrimination caused the company to not transfer her to any open jobs. Brown did not receive any offers, despite this letter.

To understand Brown's claims about her lack of offers, it's important to note how the company assesses candidates and fills jobs. When a position opens at the company, the HR Manager for the relevant department creates a requisition in Kenexa, the company's online job application and tracking system. Then upper management approves the requisition. Once that happens, the HR Manager may look to an internal departmental candidate for the role.

If the HR Manager does not find any satisfactory internal candidate for the open position, Talent Acquisition Center (TAC) steps in to help. TAC Recruiters post the position opening online, and both internal and external candidates can apply then. The Recruiters assist the company's Hiring Managers, who decide who to hire in the end.

---

[2] The parties dispute the exact number of positions to which Brown formally applied.

Pamela Hoye worked at the company as the Talent Acquisition Manager when Brown applied for the eleven jobs. In that position, Hoye had access to confidential self-identification information, including whether a candidate has a medical condition. Recruiters, on the other hand, lack access to this information when they review applications and recommend certain candidates to the company's Hiring Managers.

But sometimes Hoye acted as a Recruiter, even though she mainly worked as the Talent Acquisition Manager. And Hoye acted as the Recruiter assisting the Hiring Managers for eight of the eleven positions to which Brown applied. When Hoye acts as a Recruiter, she does not look at the confidential, self-identification information that she otherwise has access to in her managerial role. In fact, Hoye swears she did not look at Brown's self-identification at all. Instead, she says she decided not to interview Brown upon reviewing Brown's evaluations that she got from McGunagle.

Brown also applied for a role as secretary to Patricia Zazzetti. Zazzetti acted as the Hiring Manager for that position. She, like Hoye, asked McGunagle about Brown's prior performance after a Recruiter recommended Brown to Zazzetti as a potential candidate to interview. After reviewing the evaluations and speaking with McGunagle on the phone, Zazzetti chose not to interview Brown, as well. McGunagle told Zazzetti that McGunagle would have concerns about hiring Brown over Brown's inattention to detail, software mistakes, scheduling issues, and overall poor work. The two did not discuss Brown's FMLA leave. That said, in later interviews Zazzetti asked interviewees the maximum work each candidate thought an employee should miss.

Of the eleven positions to which Brown applied or expressed interest, the company filled ten with younger individuals. It paid new employees higher annual salaries. And nine employees did not have disabilities. We do not know the two others' disability statuses.

5

Pointing to these facts as support, Brown alleges that Defendants discriminated against her because of her disability, age, and FMLA leave when they chose not to transfer her to or rehire her for an available position at the company. Brown arbitrated the issues. Yet the arbitrator denied her relief on all claims.[3] So Brown filed her complaint in the district court, alleging that Defendants discriminated against her in violation of the (1) Americans with Disabilities Act (ADA), (2) Michigan Persons with Disabilities Civil Rights Act (PWDCRA),[4] (3) Age Discrimination in Employment Act (ADEA), and (4) Michigan Elliot-Larsen Civil Rights Act (ELCRA).[5] She also sued for retaliation under these four and the FMLA.[6]

The district court granted summary judgment for Defendants, finding that although Brown established a prima facie case of discrimination, she did not show a genuine issue of material fact as to pretext. And without deciding whether Brown showed a prima facie case of retaliation, the court found that she also failed to establish a genuine issue of material fact as to pretext for the

---

[3] A Problem Resolution Policy required Brown to exhaust her claims through alternative dispute resolution before filing a complaint. Defendants contend that Brown did not exhaust her retaliation claims before the arbitrator, so she cannot raise them in federal court. But Brown raised the retaliation arguments in a cursory fashion during arbitration. And the arbitrator considered Brown's arguments to include retaliation. So we decline to dismiss on failure to exhaust grounds.

[4] This circuit usually analyzes ADA and PWDCRA claims the same way. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) ("The PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim. [The plaintiff] provides no argument as to why we should treat the claims separately, nor does our review indicate as much." (internal quotation marks omitted)). The same is true here. Brown provided no argument on why the two should receive different treatment, so we review them the same way.

[5] This circuit also generally analyzes ADEA and ELCRA claims under the same standards. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009). *But see Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 n.2 (6th Cir. 2008) (noting that Michigan requires a higher causation standard for ELCRA retaliation claims); *see also Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 703 (6th Cir. 2016) (noting a discrepancy over whether ELCRA requires a showing that age "was a determining factor in the adverse employment decision[]" or a "but-for" cause of the adverse employment decision); *see also Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 438–39 (6th Cir. 2002) (noting that Michigan law requires a higher burden on plaintiffs at the pretext stage). For this case, we analyze the ADEA and ELCRA claims the same, like in *Geiger*. And we need not apply *Hopson* here because we do not find a genuine issue of material fact as to pretext under the general standard anyway.

[6] And Brown sued for FMLA interference. The district court found that she abandoned this claim, and Brown did not appeal that finding.

retaliation claims. This appeal followed, in which Brown argued that Defendants' reason for failing to transfer or rehire her was a pretext for discrimination and retaliation.

II.

We review grants of summary judgment de novo. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). And we view the evidence in the light most favorable to the nonmoving party. *Redlin*, 921 F.3d at 606.

III.

Plaintiffs can support discrimination and retaliation claims using either direct or indirect evidence. Indirect evidence is evidence that requires "a factfinder to draw [] reasonable inference[s] that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). By contrast, direct evidence does not require a factfinder to draw any inferences to conclude that the employer wrongfully discriminated. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). When a plaintiff relies on indirect evidence to show discrimination in violation of the ADA, PWDCRA, ADEA, or ELCRA, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (applying *McDonnell Douglas* in an ADA and PWDCRA situation), *abrogated on other grounds by Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308 (6th Cir. 2019); *Geiger v.*

7

*Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (applying *McDonnell Douglas* in the ADEA and ELCRA context).

Under *McDonnell Douglas*, (1) a plaintiff must establish a prima facie case of discrimination; then (2) the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff; and (3) if the defendant does so, the burden of production shifts back to the plaintiff to show that the defendant's articulated reason was pretext for the adverse employment action. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019).

For this appeal, we assume Brown has established a prima facie case of discrimination. And Defendants have articulated a legitimate, nondiscriminatory reason for the company not transferring or rehiring Brown: Brown's job performance.[7] *Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019) (noting that "poor performance [is a] legitimate reason[] for an adverse-employment action"); *Akers v. Alvey*, 338 F.3d 491, 499 (6th Cir. 2003) (rehire context). So we only analyze the last burden-shifting prong—whether Brown presented a genuine dispute about whether Defendants' stated reason for not transferring or rehiring Brown was pretextual.

A plaintiff can establish pretext by showing that the proffered reason: "(1) ha[d] no basis in fact; (2) did not actually motivate the [adverse employment] action; or (3) [was] insufficient to warrant the [adverse employment] action." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018) (quoting *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014)). Parties need not follow the categories rigidly. The categories simply provide a

---

[7] The dissent claims that Defendants' articulated reason for the alleged failure to transfer is that "they just 'didn't think about it.'" Yet in their brief, Defendants never pointed to that comment from one of the many employees at the company as the reason they failed to transfer Brown. Even worse, Brown herself never makes the dissent's argument that Defendants' reason was because "they just 'didn't think about it.'" Rather Brown clearly admits the fact that Defendants' proffered reason for not transferring or rehiring her was performance deficiencies (though she of course disputes whether her performance was poor). (*See* Appellant's Br. at 20.)

"convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer [take the employment action] for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). Ultimately the plaintiff must produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [or failed to rehire] her." *Chen*, 580 F.3d at 400.[8] She must meet this evidentiary burden by a preponderance of the evidence. *Redlin*, 921 F.3d at 607. We look first at the traditional categories and then to Brown's general arguments.

## A.

Brown fails under the first category of establishing pretext because Defendants' proposed reason for not transferring or rehiring Brown—poor performance reviews—has a basis in fact.[9]

---

[8] Although Brown cites the above categories, she does not articulate which of her arguments fall under which categories. Nor does she separate out the discrimination pretext arguments from the retaliation pretext arguments. We thus analyze her proffered pretext arguments as applying to both.

Brown makes three pretext arguments in her brief's Argument section but incorporates the facts from her Statement of the Case into her Argument section. So we analyze all facts she mentions in the brief to see if a genuine issue exists over pretext.

[9] The dissent faults us for "fail[ing] to address the fact that Defendants have not offered . . . a legitimate justification for their termination of Brown." We don't analyze this because Brown never argued it. In the Argument section of her brief, Brown does not claim that Defendants' decision to *terminate* her was discriminatory or retaliatory—just their decisions to not transfer or rehire her. (*See* Appellant's Br. at 19–23.) And Brown does not argue discriminatory or retaliatory termination probably because Defendants said they terminated her to reduce the workforce and she knows she would have had to meet a heightened standard for her prima facie case then. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536–37 (6th Cir. 2014) ("When an employee is terminated as part of a reduction in force, the employee must meet a heightened standard to prove his prima facie case: He must present additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled him out for discharge for impermissible reasons." (cleaned up) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990))). Brown has not presented such evidence.

What's more, the dissent frames the failure to transfer inquiry incorrectly by saying "no reduction in force was necessary," since there were "open secretarial positions." "[A] true work force reduction case" is not defined by whether there are other jobs open at a company. *Barnes*, 896 F.2d at 1465. Rather, the correct inquiry is whether an employee's position was eliminated at the company. *Id.* And "[t]his Circuit has clearly established that an employer has no duty . . . to permit an employee to transfer to another position . . . when the employee's position is eliminated as part of a work force reduction." *Id.* at 1469. So reducing a workforce is distinct from failing to transfer, yet the dissent equates the two.

And the dissent accuses us of not separating out the failure to transfer versus failure to rehire claims. But the dissent ignores the fact that all of Brown's arguments lump the two together. She does not independently distinguish arguments between failure to transfer and failure to rehire, instead implying that the failure to transfer after her termination was much like the decision not to rehire her after her termination. So that's why we analyze the claims as one.

To succeed, a plaintiff must show that the employer's proffered reasons never occurred or were factually false. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002). Brown never received an OC overall rating in all her years working for Lipanski. And she received worse ratings in the second half of her time with the company than in the first half; in two of the last five years at the company, she received IR ratings, not even SC ratings. Brown contends that she "had historically good performance ratings." (Appellant's Br. at 20.) But disagreeing with an employer's "assessment of [] performance . . . does not render [the employer's] reasons pretextual." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725–26 (6th Cir. 2012) (ellipsis in original) (quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990)). Brown has not shown evidence that IRs and SC (what she received) were average or above-average ratings for secretaries at the company—i.e., historically good.

And Brown's evaluations undeniably contained criticism. For example, Brown received the lowest possible score in the communication subcategory three years in a row. Her performance evaluations across several years noted that Brown tended to be defensive and abrupt. In addition, Brown struggled to perform critical job responsibilities. Lipanski repeatedly admonished her that she needed to improve in booking hotel and travel arrangements. On top of that, Brown had a problem with consistency. She received the lowest possible score for consistency back in 2013. Ever since then, Brown's other performance evaluations flagged her inconsistent work product. Finally, she had a history of making careless mistakes that would often affect the rest of her team. Those mistakes included mismanaging Lipanski's schedule. And Brown's performance evaluations consistently criticized her for making easily correctable errors. All in all, Defendants

assessed these evaluations as not good enough for rehire. Brown has not produced evidence showing why the company gave a factually false assessment of her ratings.

Second, Brown has not shown that these poor performance reviews did not motivate the decision to not rehire Brown.[10] To succeed here, Brown must provide evidence "which tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant." *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 9 (6th Cir. 2007) (brackets in original) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Simply put, her evaluations stand. Brown has not shown by a preponderance of the evidence that discrimination or retaliation for disability, age, or FMLA leave motivated the decision to not rehire *more than* Brown's evaluations did.

Third, the company's reasons warranted the decision not to rehire Brown. Brown argues that the company did not let her go for performance issues and then pretextually pointed to her performance issues as grounds for not rehiring her. It is true that letting an employee go for reasons unrelated to performance and then not rehiring allegedly because of performance can provide pretext evidence. *See Geiger*, 579 F.3d at 625. At the same time, this is only the case if a plaintiff shows the employer acted with discriminatory animus. *Id.* Brown didn't. Indeed, she only gave conclusory statements that pretext overcame the company's reasons. And that's not enough for discriminatory animus. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 728 (6th Cir. 2007) (finding that conclusory statements that pretext existed do not provide pretext evidence). Faced with a chance to hire better performing individuals, the company permissibly chose to take that risk, without animus.

---

[10] To argue that her prior performance did not actually motivate the decision to not rehire her, Brown necessarily concedes the factual bases of the company's decision. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (arguing under the second category requires "admit[ting] the factual basis underlying the employer's proffered explanation and further admit[ting] that such conduct could motivate dismissal[]").

To this argument, Brown adds that the company's policies mandate her rehire.[11] Yet McGunagle noted that an internal candidate need not automatically fill an open position if no one fits. And nothing in the TRW Recruitment Process flowchart or Job Posting Policy requires the company to transfer or rehire internal candidates. The decisionmakers did not discriminate simply because they hesitated after reading Brown's evaluations. At bottom, different standards can exist for firing versus rehiring, if discriminatory animus does not motivate the decision to not rehire. *See Geiger*, 579 F.3d at 625.

B.

Brown also argues points that do not noticeably fall under the traditional categories for showing pretext. She's allowed to do so. *See Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). So we analyze those claims in turn.

Brown claims that the alleged decisionmakers—McGunagle, Hoye, and Zazzetti—knew about her disability, her FMLA leave, and her attorney's February 2016 letter threatening legal action.

First off, Brown has not provided enough evidence showing that McGunagle is a decisionmaker. Joe Cantie told McGunagle that the company planned to let Brown go. Then the company's Talent Acquisition Recruiters and the Hiring Managers, not the HR Managers, decided who to hire after Brown left.

---

[11] The dissent claims that we fail to analyze Defendants' alleged, informal "policy of appointing qualified internal candidates to open positions before posting job openings online." Again, we analyze this "policy" issue in the way that we do because, *at best* Brown only mentions that there existed a policy that "required" and "direct[ed]" her transfer. (*See* Appellant's Br. at 10.) She doesn't press any argument about an *informal* transfer policy. Plus, her only reference to an alleged mandatory policy is found in the Statement of the Case section of her brief, the facts of which we've liberally incorporated as part of her argument, to her benefit, even though she failed to explicitly make any arguments about the alleged policy in her Argument section.

What's more, "[s]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . ." *Geiger*, 579 F.3d at 621 (second alteration and ellipsis in original) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). So McGunagle's "this girl is never here" comment lacks relevance. Even if McGunagle were a decisionmaker, her statement does not relate to the decision to let Brown go. McGunagle said this when talking about categorizing a day off work, months before Brown left the company.[12]

As for Hoye, Brown alleges that because she had access to Brown's disability self-identification records, Hoye knew Brown had a disability. But Hoye swore under oath that she did not open Brown's forms. "[M]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Lindsay v. Yates*, 578 F.3d 407, 421 (6th Cir. 2009) (quoting *Peters*, 285 F.3d at 470); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 769 (6th Cir. 2015) (en banc) ("Any negative inference from [plaintiff's] testimony is unreasonable because it comes unaccompanied by facts in the record, save [plaintiff's] own speculation. . . . [S]peculation . . . does not create a genuine dispute of fact . . . when it is blatantly contradicted by the record." (internal quotation marks omitted)); *Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015) (A plaintiff cannot meet her burden for pretext by mere "speculation in the face of documentary proof and deposition testimony . . . ."); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 620 (6th Cir. 2003) (Allegedly

---

[12] Contrary to the dissent's implications, whether someone is a decisionmaker is also relevant at the pretext stage, not merely the prima facie stage. *See Rachells v. Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 665–66 (6th Cir. 2013) (discussing cases that look at statements by decisionmakers versus non-decisionmakers in their pretext analyses). On top of that, we find it odd that the dissent accuses us of not analyzing Brown's prima facie case, because assuming the prima facie case clearly only benefitted her anyway.

"manipulated" scores—the purported pretextual evidence—"amount[ed] to nothing more than unsupported speculation.").

Just because Hoye accessed Brown's application in Kenexa does not create a genuine issue over Hoye's sworn word. Of course Hoye looked at Brown's Kenexa profile. Her job required it. Brown speculates that Hoye read the disability information. But such conjectures fail to prevent summary judgment. *See Ferrari*, 826 F.3d at 897–98 (finding that a plaintiff must present evidence of both access to a file *and* review of it, not simply an opportunity for review, for the plaintiff to show pretext).

Even assuming she did read the disability information, mere knowledge of a disability is not enough to show pretext. *See Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1073 (8th Cir. 1998). In *Christopher*, the plaintiff's supervisor allegedly discovered the plaintiff's disability when looking at her file. *Id.* The court found no pretext because knowledge only satisfies the prima facie case. *Id.* ("Mere knowledge of a disability cannot be sufficient to show pretext.")

Finally, Brown provides no evidence that Hoye knew about Brown's FMLA leave or her attorney's letter. Brown claiming that Hoye and McGunagle must have spoken about the disability, leave, or letter when McGunagle walked Brown's evaluations to Hoye is simply speculation.

Now Zazzetti. She said under oath that she did not know about Brown's disability or her age. And Zazzetti did not discuss FMLA leave with McGunagle. Brown asserts that Zazzetti and McGunagle must have discussed these, because they spoke on the phone about Brown's prior performance. In effect, Brown tries to create a factual question by saying no one should believe Zazzetti's testimony. But again, speculation and conjecture do not get Brown over her evidentiary hurdle. *See Lindsay*, 578 F.3d at 421; *Sutherland*, 344 F.3d at 620. With no other proof, Brown

14

has not shown a genuine issue about the motivation behind Zazzetti's choice. And like Hoye, Brown gave no evidence showing that Zazzetti knew about Brown's FMLA leave or her attorney's letter.[13]

Brown does note that Zazzetti asked candidates about the appropriate amount of work to miss. That's not enough. Although Zazzetti was a decisionmaker for one position, her questions in interviews were also unrelated to Brown's desired transfer. *See Geiger*, 579 F.3d at 621.

Brown also argues that the Recruiters entering "ZF Not Interested" in Kenexa evidences pretext since the Recruiters did not instead enter "Applicant Not Qualified." This doesn't matter. "ZF Not Interested" does not contradict the idea that her prior performance motivated the decision. In essence, the company lacked interest *because of* that prior work.

Next, we see no significance over Lipanski changing Brown's rating right before Lipanski left. No one saw Lipanski as a decisionmaker for the positions Brown wanted. Lipanski walked away before the company let Brown go and well before Brown applied to other jobs. Besides, Lipanski did not edit Brown's *overall* rating from a SC to a SC Minus. She changed one of the fourteen *subcategories* from a SC to a SC Minus. This alteration is negligible, especially when Brown had ten years' worth of other subcategories that Zazzetti and Hoye could review. We decline to inflate such a minor edit to the level of creating a dispute over pretext.[14]

---

[13] The positions for which Hoye acted as the Recruiter and the job for which Zazzetti acted as the Hiring Manager only accounted for nine of the eleven jobs to which Brown applied. That leaves two more positions. The company hired another individual for one of those positions before the company let Brown go. So Brown had no time to even apply. And again, nothing required a transfer. As for the second position, there appears to be a fact dispute on whether Brown applied. But regardless, Brown failed to show that the decisionmakers for that position even knew about her disability, age, or FMLA. Moreover, she's failed to show that those decisionmakers refused to hire her for that position because discrimination or retaliation motivated them more than her prior performance. So no genuine issue of material fact exists over these two positions either.

[14] We also see nothing relevant about no one reviewing the 2015 evaluation with Brown before she left. Brown admitted that supervisors and employees usually review evaluations together in February during the next year. But Brown no longer worked for the company in February 2016. So this argument lacks relevance.

Finally, for age only, Brown points to the same statistical evidence that she used to show her prima facie case. Although a plaintiff need not always "produce additional evidence to support a finding of pretext[,]" if the plaintiff points to evidence that she already presented, it must specifically rebut the employer's proffered legitimate, nondiscriminatory reason. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 533 (6th Cir. 2007), *overruled on other grounds by Gross*, 557 U.S. at 177 n.4. And again, Brown must show that the "illegal motivation was *more likely* the reason for the adverse employment action." *Id.* at 533 n.15. She has not shown us any evidence that age more likely motivated the decision not to rehire her. Unlike in *Blair*, where the evidence of many age-related comments and derogatory statements almost amounted to direct evidence, *see id.* at 524–28, Brown simply gives statistical evidence. That prima facie evidence is not enough to show pretext too.

\* \* \*

For these reasons, we find that Brown failed to show a genuine issue of material fact as to pretext for her age and disability discrimination claims and age, disability, and FMLA leave retaliation claims. We AFFIRM.

**CLAY, Circuit Judge, dissenting.** Plaintiff Darlene Brown has demonstrated a genuine dispute of material fact at each stage of the *McDonnell Douglas* inquiry. Therefore, I cannot agree with the majority's conclusion that ZF TRW is entitled to judgment as a matter of law. On a motion for summary judgment, this Court's function is not "to weigh the evidence and determine the truth of the matter" itself. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Rather, the only question presented in this case is whether a reasonable juror could find that ZF TRW discriminated against Brown on the basis of her disability and age. Because a reasonable juror in this case could easily find in Brown's favor, I respectfully dissent.

## I.      Statement of Facts

Darlene Brown is disabled within the meaning of the relevant statutes. She suffers from recurring asthmatic and respiratory problems that require her to use portable oxygen therapy, a wheelchair, and at times to take medical leave from work. Unfortunately, her respiratory symptoms cannot be controlled through the use of an inhaler. Sometimes Brown's oxygen levels drop so low that her body's core functioning begins to fail, and she has to go to the emergency room. Once there, she is placed on heavy duty steroids and undergoes oxygen therapy and breathing treatments every three or four hours. Every time that Brown took FMLA leave during Defendants' employ, she was in the hospital as a result of her medical condition. She would usually stay in the hospital for approximately five days and then would return home to recover, continuing her breathing and steroid treatments. As soon as she received a doctor's approval, she would return to work.

Brown's transition back to work from FMLA leave was not always easy. At times, Defendants did not allow Brown to sit at her own desk after she returned from leave. For example, on one occasion, Defendants allowed a temporary contract worker to sit at Brown's desk for two

weeks upon Brown's return from leave and required Brown to sit in a separate office organizing binders for an ongoing litigation. At another point, Brown's supervisor, Ann Lipanski, chastised Brown for her time away from work. According to Brown, early on in her role as Executive Secretary, Lipanski was very upset that Brown took time off for FMLA leave. Lipanski told Brown that if she wanted to make the job part-time, she could do so, but otherwise Lipanski needed her to be at work (*i.e.*, not exercising her rights under the FMLA). On another occasion, Brown met with Human Resources Director, Lisa McGunagle, after an FMLA leave in 2015. During that meeting, McGunagle remarked to Brown that she had been looking over Brown's records and thought "wow, this girl is never here."

Brown worked for Kelsey-Hayes Company for twelve years. From 2003 through 2006, she worked as an administrative assistant within the finance department. From 2007 until her termination, Brown worked as the Senior Executive Secretary for Ann Lipanski, the Vice President of Internal Audit.

In May 2015, German auto supplier ZF Friedrichshafen AG acquired TRW Automotive Holdings Corp., including its subsidiary Kelsey-Hayes Company. In November, Brown's supervisor, Lipanski, decided to voluntarily leave the company as a result of the merger. Notably, after Lipanski announced her resignation, Defendants did not consider what would happen to Brown. For two months, Defendants did not consider whether they should place Brown into another secretarial position as a result of Lipanski's resignation, even though there were several positions available at the time.

Then, on December 4, 2015, Lipanski's last day of work, Lipanski decided to downgrade Brown's 2015 performance review. She changed Brown's rating in the subcategory for "T&E Administration, Reservations, and Expense Reporting" from a "Solid Contribution" to a "Solid

Contribution Minus." Contrary to practice over the past ten years, Lipanski never discussed Brown's 2015 performance review with her.

Brown presents ample evidence that Lipanski's resignation provided Defendants with a convenient excuse to illegally terminate her based on her disability and age. In January 2016, ZF TRW decided that Lipanski would not be replaced. At that time, neither Joe Cantie, the CFO of the former TRW Automotive Holdings Corp., or Lisa McGunagle, the Human Resources Manager for IT and Finance, considered any other secretarial positions to which Brown could be transferred. According to Cantie, he assumed that it would be HR's responsibility to look into transferring Brown. According to McGunagle, she just "didn't think about it." [1] (R. 23, Pg. ID 571.)

---

[1] McGunagle's testimony from the ADR proceeding went as follows:

> Q. Did you make that conclusion [that Brown's position would be eliminated] or did someone tell you that?
> A. Someone told me probably that first week of January.
> Q. And who would that have been?
> A. Joe Cantie.
> Q. So, he says Darlene Brown's position is going to be eliminated?
> A. Correct.
> Q. Do you take any steps at that point to try and identify any other positions she might be able to fill?
> A. No.
> Q. Why not?
> A. I didn't really think about it.
> Q. So, wouldn't that be part of you function in HR to do that?
> A. Yeah, but I didn't think about it, to be honest.
> Q. Okay. So, you were told she's going to be eliminated, so you're just going to eliminate her. No thought to any other positions she might be able to fit into?
> A. No.

(R. 23-5, Pg. ID 571–72.) McGunagle maintained this response throughout her testimony. At another point she testified:

> Q. So, your testimony is you knew there was [an open] position, but it never crossed your mind to think about putting Miss Brown into that position.
> A. Correct.
> Q. Okay. Why not?
> A. I didn't think about it.
> Q. Wouldn't that be part of your function in HR?
> A. I did not think about it.

(*Id*. at Pg. ID 572.)

Defendants do not provide any explanation for their failure to consider placing Brown into open secretarial positions. In fact, they admit that Brown's performance played no role in their decision to terminate her. During her testimony, Lipanski stated that she never once considered terminating Brown as a result of Brown's job performance. Nevertheless, on January 14, 2016, Cantie and McGunagle had a meeting with Brown in which they informed her that she was being terminated due to a reduction in force. At that time, there were three job openings for secretarial positions available: Administrative Assistant reporting to Mamatha Chamarthi, Senior Executive Secretary reporting to Gerald Dekker, and Executive Secretary reporting to Sharath Reddy.[2] All of these were positions for which Brown was qualified based on her past years of experience as Senior Executive Secretary reporting to the Vice President of Internal Audit. During her termination meeting, Brown inquired into the possibility of being transferred to the available position reporting to Dekker. McGunagle responded that Brown was welcome to apply online and did not provide Brown with any other information.

Over the next seven months, Brown applied to eleven available secretarial positions at ZF TRW, including the Chamarthi position, Dekker position, and Reddy position. ZF TRW did not interview Brown for any of these positions, and they only hired younger candidates who did not identify as disabled.[3]

On February 12, 2016, Plaintiff's attorney sent a letter to McGunagle notifying her that Brown intended to sue ZF TRW because Brown believed that the decision to terminate her rather

---

[2] The parties dispute whether the Chamarthi position was available at the time of Brown's termination meeting.

[3] The only exception was Susan German, who is older than Brown. Defendants had previously employed German as a temporary contract worker, and she was one of the temporary workers who would sometimes cover for Brown when Brown was on FMLA leave.

than place her into open positions was motivated by age and disability discrimination and in retaliation for her past use of FMLA leave.

## II. Discussion

The majority reaches its desired outcome in this case by artificially siloing Defendant's decision to terminate Brown from its decision not to rehire her. The majority fails to analyze the former decision, which necessarily includes Defendants' decision not to transfer Brown into open positions within the company, and takes the evidence in the light most favorable to Defendants in analyzing the latter. In so doing, the majority downplays the clear possibility (in fact, likelihood) that both decisions were part of an overarching scheme to get rid of an aging, disabled employee.

To start, the majority assumes without deciding that Brown has established her *prima facie* cases of disability and age discrimination. And she has. Brown has shown that she is disabled within the meaning of the relevant statutes and that she was 59 years old at the time of her termination. ZF TRW subjected Brown to as many as two, and perhaps three, adverse employment decisions. First, Defendants failed to transfer Brown into available secretarial positions at the company after Lipanski voluntarily resigned. Then, Defendants terminated Brown. Next, Defendants failed to rehire Brown for any of the eleven positions to which she applied over the next several months. Brown was qualified for these available secretarial positions as she had worked as an administrative assistant in the Finance department for three years and as a Senior Executive Secretary reporting to the Vice President of Internal Audit for nine years. Defendants do not dispute that Brown's performance played no role in their decision to terminate her. Moreover, ZF TRW, including key decisionmaker Lisa McGunagle, knew that Brown was disabled. Lastly, Brown was replaced by younger employees, with the exception of one, and none of whom identified as disabled. Therefore, Brown has established her *prima facie* cases of

disability and age discrimination. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016) (setting forth the elements to prove a *prima facie* case of disability discrimination); *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (setting forth the elements to prove a *prima facie* case of age discrimination).

The majority then hastily skips over the second step of the *McDonnell Douglas* inquiry. But that step is important here. Defendants offer two justifications for what they allege were two independent adverse employment decisions in this case: the decision to terminate Brown and the decision not to rehire her. First, Defendants say that they decided to terminate Brown due to a reduction in force. Then, they say that they did not rehire Brown for any of the eleven positions to which she applied due to her prior job performance. Easy enough. However, the majority and Defendants conspicuously fail to address the fact that Defendants have not offered any justification for their decision not to transfer Brown into open secretarial positions rather than terminate her. That is, Defendants have not offered a legitimate justification for their termination of Brown because no reduction in force was necessary. The majority skips this step of the *McDonnell Douglas* inquiry and fails to analyze whether Defendants' proffered justification for terminating Brown (purportedly due to a reduction in force) is itself evidence of pretext for their subsequent decision not to rehire her.[4]

---

[4] The majority mischaracterizes Brown's argument on appeal in attempting to account for this gap in its analysis. To be sure, Brown does not argue that the termination decision itself was discriminatory or retaliatory. But she argues that her unnecessary termination is evidence of pretext for Defendants' subsequent decisions not to transfer or rehire her. In other words, the fact that Defendants terminated her "ostensibly due to a reduction-in-force" and not for performance issues casts doubt on their proffered justification for failing to rehire her due to that same performance. (Appellant's Br. at 3; *see also id.* at 22 ("The record evidence in this case clearly created a genuine issue of material fact as to whether Defendant's reasons were pretextual. As stated above, Defendants admit that they did not terminate Plaintiff for performance reasons and never even considered disciplining or terminating her for poor performance during her 12 years of employment. Yet, they now claim that a 'documented history' of poor performance motivated their decisions to not transfer or rehire plaintiff to open, comparable positions for which she was qualified.").) While a relatively nuanced argument, it is an important one, given that "[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.), *amended on other grounds*, 97 F.3d 833 (6th Cir. 1996)).

A review of the record shows that Brown has demonstrated a triable issue as to pretext for one main reason: Defendants did not need to terminate her. Instead, they could have transferred her into numerous open positions within the company for which she was qualified. Their failure to do so casts serious doubt on the legitimacy of their assertion that they terminated Brown out of necessity and failed to rehire her due to performance issues, and creates a genuine dispute of material fact as to pretext.

Simply put, there is something inherently suspicious about Defendants' decision to terminate Brown for non-performance-related reasons when they could have transferred her to open positions within the company. Based on this questionable decision, a juror could easily reject Defendants' argument that they then decided to change course and refuse to rehire Brown for the eleven positions to which she applied based on her prior performance. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) ("At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.").

Of course, Defendants were not *required* to transfer Brown to other available positions for which she was qualified. But Brown has shown that Defendants have a policy of appointing qualified internal candidates to open positions before posting job openings online and thereby permitting external candidates to apply. And Defendants do not dispute that Plaintiff was qualified for these positions (recall that they admit they did not terminate her due to performance issues). Therefore, the burden is on Defendants to explain why they departed from their own policy and terminated Brown rather than transferring her. The only justification they even purport to assert is that they just "didn't think about it." (R. 23-5, Pg. ID 571.) Surely, even the majority would agree

that this is not enough to overcome the second-prong of the *McDonnell Douglas* inquiry and shift the burden back to Plaintiff to establish pretext.[5]

By conspicuously failing to analyze this issue, the majority accepts ZF TRW's version of the facts as true and draws inferences in its favor. But when drawing all inferences in favor of Brown, as is proper at the summary judgment stage, it becomes clear that Brown has demonstrated a genuine dispute of material fact as to Defendants' failure to transfer her into open positions. That is, Brown has demonstrated the existence of a factual dispute as to whether Defendants' alleged justification for her termination was false, and would cause a reasonable juror to conclude that their purported justification for failing to rehire her is pretextual. Having established her *prima facie* case, the extent to which Brown's disability and age motivated Defendants' failure to transfer her (a decision for which they have offered no legitimate justification) or rehire her is a question for the jury.

In addition, the majority's discussion of the relevant decisionmakers in this case and their respective knowledge of Brown's disability obscures the main issue: whether a jury could "reasonably reject" Defendants' explanation for terminating Brown and then failing to rehire her. *Chen*, 580 F.3d at 400. Usually this Court analyzes which individuals made certain adverse employment decisions against a protected employee at the first stage of the *McDonnell Douglas* inquiry in order to determine if an employee has made out her *prima facie* case of discrimination or retaliation. *See, e.g.*, *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (discrimination); *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512–13 (6th Cir. 2016) (retaliation). But in this case the majority assumes without deciding that Brown has established

---

[5] The majority says that "Defendants never pointed to that comment from one of the many employees at the company as the reason they failed to transfer Brown," and therefore we do not need to analyze it. *Ante* at 8 n.7. But the takeaway is that it was *Defendants*' burden to provide a legitimate justification for their failure to transfer Brown instead of terminating her, *see Ferrari*, 826 F.3d at 892, and they simply failed to do so.

her *prima facie* cases and from there goes on to analyze pretext. Thus, it is unclear what impact, if any, the majority's discussion of the relevant decisionmakers has on its ultimate disposition of this appeal. Regardless, it is clear that Brown has demonstrated a triable issue as to whether the relevant decisionmakers in this case knew of her disability and FMLA leave.

First consider Lisa McGunagle, the HR Manager for the IT and Finance departments. McGunagle is the common thread running through all of the adverse decisions made against Brown. McGunagle was one of two people at the meeting to inform Brown of her termination (the other was Joe Cantie, the CFO of the former TRW Automotive Holdings Corp.). When Brown asked at the meeting about being transferred into open positions, McGunagle told her to apply online and did not give her any further information. As the HR Manager, it was McGunagle's responsibility to consider transferring Brown to available positions within the company rather than terminating her, but again, according to McGunagle herself, she just "didn't think about it." As the majority recognizes, there is no doubt that McGunagle knew Brown's age and knew that Brown is disabled and repeatedly took FMLA leave relating to her disability. In fact, McGunagle was often the employee who approved Brown's FMLA leave. In one instance, upon reviewing Brown's records, McGunagle remarked to Brown that she thought "wow, this girl is never here." Thus, at the very least, Brown has demonstrated a triable issue as to whether McGunagle was a decisionmaker with regards to the decision to terminate Brown rather than transfer her into open positions within the company. The majority's failure to so conclude is a direct consequence of its failure to question Defendants' proffered justification for Brown's termination.

Moreover, even if McGunagle herself was not a decisionmaker with regard to Defendants' next adverse employment decision (the decision not to rehire Brown), Brown has demonstrated a triable issue as to whether those who made that decision knew of her disability and FMLA leave

as well. This is because McGunagle remained involved with all of the decisionmakers who decided not to rehire Brown.

For example, Pamela Hoye was the recruiter who assisted in filling eight of the eleven positions to which Brown applied, including the Dekker position. Hoye had access to the self-identification of disability and equal employment opportunity forms that Brown submitted with her various applications. On February 16, 2016, Hoye e-mailed McGunagle to request Brown's prior performance reviews. McGunagle then delivered the performance reviews to Hoye in person. After that meeting, Hoye decided not to select Brown to be interviewed. For the next seven positions to which Brown applied in which Hoye was the respective recruiter, Hoye declined to advance Brown to the interview stage.

The majority draws inferences in Defendants' favor and accepts Defendants' version of the events as true when it concludes that Hoye did not open Brown's disability forms based on Hoye's testimony. But the relevant question is not whether Hoye opened Brown's disability forms. Instead, the relevant question is whether Hoye knew of Brown's disability. Brown has demonstrated a triable issue as to that question for two reasons. First, we do not know what McGunagle said to Hoye when she dropped off the performance reviews in person. However, we do know that, after this visit, Hoye failed to advance Brown to the interview stage for any of the eight available positions that were equivalent to Brown's prior position within the company. Defendants' best explanation for this is that Brown's prior performance reviews were, at worst, inconsistent. Moreover, Brown's evidence shows that simply by accessing her Kenexa profile, Hoye would have known that Brown is disabled. Indeed, the fact that Brown submitted voluntary self-identification of disability forms is apparent on the face of her Kenexa profile itself, which was clearly accessed by Hoye. Therefore, a jury should decide whether Hoye knew of Brown's

disability and the extent to which that knowledge motivated her decision not to recommend Brown for interviews.

Next, consider Patricia Zazzetti. In February 2016, Brown applied for an executive secretary position reporting to Zazzetti. Katelyn Silkworth, rather than Pamela Hoye, was the recruiter responsible for assisting Zazzetti in filling the hiring need. After receiving Brown's application, Zazzetti called McGunagle to discuss Brown's reason for leaving, Brown's prior performance, and any concerns that McGunagle might raise regarding rehiring Brown as an executive secretary. Again we do not know exactly what was said, but following their conversation Zazzetti decided not to interview Brown. In at least one interview with another applicant, Zazzetti asked the applicant, "[h]ow much time do you think is acceptable to miss work for any reason except vacation?" (R. 23-4, Pg. ID 457.) At this stage of the proceedings, we must rationally infer that this question evinces Zazzetti's concern that her assistant would take time away from work for medical reasons, such as by exercising her right to FMLA leave. Therefore, we should find that Zazzetti's conduct following her conversation with McGunagle is probative of whether Defendants' failure to rehire Brown was discriminatory. *See, e.g.*, *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 665 (6th Cir. 2013) ("[E]ven the conduct of a nondecisionmaker may be probative of whether an adverse action directed at a plaintiff was [discriminatorily] motivated.").

### III.  Conclusion

For these reasons, Brown has demonstrated a genuine dispute of material fact at each stage of the *McDonnell Douglas* inquiry. Brown has established her *prima facie* cases of discrimination and retaliation, including demonstrating a genuine dispute of material fact as to whether the relevant decisionmakers had knowledge of her disability and FMLA leave. Next, Defendants have

failed to offer a legitimate justification for their failure to transfer Brown into open positions within the company. Most importantly, a jury could "reasonably reject" Defendants' proffered justifications for firing Brown ostensibly due to a reduction in force and then failing to rehire her ostensibly due to her prior job performance. *Chen*, 580 F.3d at 400. Brown's evidence of pretext is this: Defendants never needed to terminate her in the first place. But they did, and they then failed to rehire her for eleven positions that were equivalent to the position that she previously held. Defendants' statement that they "just didn't think about" transferring Brown into some of these open positions before terminating her is insufficient to entitle them to summary judgment. Instead, this case should proceed to trial for a jury to decide whether Defendants' adverse employment decisions were part of an overall scheme to replace an aging, disabled individual with younger, non-disabled employees.